**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE EVOLV TECHNOLOGIES HOLDINGS, INC. STOCKHOLDER DERIVATIVE LITIGATION | Master File No. 1:24-cv-12822-ADB |

**DECLARATION OF ERICA L. STONE IN SUPPORT OF MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT**

I, Erica L. Stone, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Partner at The Rosen Law Firm, P.A. ("Rosen Law"). Rosen Law and Rowley Law PLLC ("Rowley") are Co-Lead Counsel in the above-captioned Massachusetts Action,[1] brought derivatively on behalf of nominal defendant Evolv Technologies Holdings, Inc. ("Evolv" or the "Company"). I submit this declaration in support of Plaintiffs' Motion for Final Approval of Derivative Settlement. I have personal knowledge of the matters set forth herein and could competently testify thereto.

2. The Derivative Matters assert or concern claims for breaches of fiduciary duties, violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), unjust enrichment, waste of corporate assets, abuse of control, insider trading, and gross mismanagement against the Individual Defendants, on behalf of nominal defendant Evolv (together with the Individual Defendants, the "Defendants," and together with the Settling Stockholders and the Individual Defendants, the "Parties").

3. The Settlement is the culmination of hard-fought, arm's-length negotiations between experienced counsel, facilitated by Jed Melnick, Esq. of JAMS ("Mr. Melnick" or the "Mediator"), a highly experienced and well-respected mediator in shareholder and securities litigation. Mr. Melnick's declaration in support of the proposed Settlement is annexed hereto as Exhibit 1.

4. Under the terms of the Settlement, Evolv will implement or maintain certain corporate governance reforms (the "Reforms") designed to prevent the recurrence of the

[1] Except as otherwise expressly provided below or as the context otherwise requires, all capitalized terms contained herein shall have the same meanings and/or definitions as set forth in the Stipulation of Settlement dated August 5, 2026 ("Stipulation" or "Stip.") attached as Exhibit 1 to the Declaration of Joshua Baker (ECF No. 12-1).

misconduct alleged in the Derivative Matters. The Reforms will remain in effect for at least five years.

5. Evolv acknowledges and agrees that the initiation and prosecution of the Derivative Matters caused Evolv to adopt and implement the Reforms. *See* Stip. § IV(B)(3).

6. Evolv further acknowledges and agrees that the Reforms confer substantial corporate benefits upon Evolv and its stockholders and that the Settlement is fair and reasonable and in the best interests of the Company and its stockholders. *See id.* § IV(B)(2).

## BACKGROUND AND SETTLEMENT NEGOTIATIONS

### A. Factual Background and Summary of the Derivative Matters

7. Evolv is a leading security technology company pioneering artificial intelligence ("AI") powered screening solutions designed to help create safer environments while maintaining efficient visitor flow and a positive visitor experience. ¶¶ 1; 55.[2] The Company serves customers across a range of end markets, including education, healthcare, sports, live entertainment, tourist attractions, houses of worship, and industrial workplaces. The Company offers two major products, Evolv Express® and Evolv eXpedite™, which are designed to efficiently screen high volumes of people and bags for concealed threats. ¶ 56. The Derivative Matters arise from the alleged misconduct concerning the Company's marketing and product-efficacy claims that the Evolv Express was superior to traditional metal detectors, revenue recognition practices, financial reporting, and internal controls.

8. Plaintiffs allege that beginning in 2022, certain reporting began to cast doubt on the efficacy of Evolv's technology. ¶¶ 4-6; 76-90; 92-95. On October 12, 2023, Evolv disclosed that the U.S. Federal Trade Commission ("FTC") had requested information regarding "certain aspects

[2] Unless otherwise noted, references to "¶__" or "¶¶__" are to the Verified Stockholder Derivative Complaint filed by Plaintiff Maas on November 12, 2024. *See* ECF No. 1.

of its marketing practices." ¶¶ 7; 97. Then, on February 19, 2024, Evolv announced that the U.S. Securities and Exchange Commission ("SEC") was conducting a "non-public, fact finding inquiry." ¶¶ 9; 101. Like the FTC, the SEC requested documents and information relating to "certain aspects of the Company's marketing practices." *Id.* These investigations placed some of the Company's past representations under federal regulatory scrutiny.

9. On October 25, 2024, Evolv announced that it had determined that the accounting for certain sales transactions was inaccurate and that, among other things, revenue was prematurely or incorrectly recognized in connection with financial statements prepared for the periods between the second quarter of 2022 and the second quarter of 2024. ¶¶ 12; 135-137. As a result, Evolv noted that certain financial statements should not be relied upon. Evolv revealed that an *ad hoc* committee of independent directors of the Board, under the direction of the Board, was conducting an ongoing internal investigation into these matters and that the Company's third quarter 2024 financial results would be delayed. ¶¶ 12; 138. Evolv noted that the committee was working closely with outside experts to complete the investigation and prepare amendments to the Company's financial statements and related filings. The Company later disclosed that, during the relevant reporting periods, certain sales of products and subscriptions to channel partners and end users were subject to "extra-contractual terms and conditions" that impacted revenue recognition and other metrics. ¶ 136.

10. On November 26, 2024, Evolv entered into a settlement with the FTC. As part of the Court-approved order entered on December 6, 2024, Evolv agreed to refrain from using certain prior marketing claims without adequate substantiation and to offer eligible school customers the option to cancel their contracts during a 60-day cancellation period.

### B. Procedural History

*I. The Massachusetts Action*

11. On November 12, 2024, Plaintiff Maas filed a verified stockholder derivative complaint on behalf of Evolv against the Individual Defendants captioned *Maas v. Glat, et al.,* Case No. 1:24-cv-12822-ADB (D. Mass.) (the "*Maas* Action"). The Maas Action brought claims for violations of Section 14(a) of the Exchange Act, breach of fiduciary duties, unjust enrichment, waste of corporate assets, abuse of control, and gross mismanagement.

12. On November 27, 2024, Plaintiff Johnson filed a verified stockholder derivative complaint on behalf of Evolv against the Individual Defendants, captioned *Johnson v. Ellenbogen, et al.*, Case No. 1:24-cv-12966 (D. Mass.) (the "*Johnson* Action"). The *Johnson* Action brought claims for violation of Section 14(a) of the Exchange Act and breach of fiduciary duties.

13. On December 3, 2024, the parties to the *Maas* Action filed a joint motion to stay pending developments in the factually related Securities Class Action. On December 4, 2024, the Court granted the joint motion to stay the *Maas* Action.

14. On December 30, 2024, the parties to the *Maas* and *Johnson* Actions filed a motion to consolidate the actions, appoint counsel, and continue the stay. The Court granted this motion on January 6, 2025, consolidating the *Maas* and *Johnson* Actions into the Massachusetts Action, appointing Rosen Law and Rowley as co-lead counsel for plaintiffs in the Massachusetts Action, and staying the Massachusetts Action.

*II. The Delaware Actions*

15. On March 10, 2025, Plaintiff Bersch filed a verified stockholder derivative complaint in the Delaware Court of Chancery on behalf of nominal defendant Evolv, captioned *Bersch v. George, et al.*, Case No. 2025-0266-MTZ (Del. Ch.) (the "*Bersch* Action"). The *Bersch* Action brought claims for breach of fiduciary duties, unjust enrichment, and insider trading.

16. On May 9, 2025, the parties to the *Bersch* Action filed a stipulation to stay the action pending developments in the Securities Class Action, which the Delaware Court of Chancery granted on May 12, 2025. On June 30, 2026, the Court issued an Order continuing the stay and directing the parties to submit a joint status report by September 1, 2026.

17. On October 2, 2025, Plaintiff Patrick filed a verified stockholder derivative complaint in the Delaware Court of Chancery on behalf of nominal defendant Evolv, captioned *Patrick v. Charlton, et al.*, Case No. 2025-1121-MTZ (Del. Ch.) (the "*Patrick* Action" and together with the *Bersch* Action, the "Delaware Actions"). The *Patrick* Action brought claims for breach of fiduciary duties, unjust enrichment, waste of corporate assets, gross mismanagement, and aiding and abetting.

18. On November 7, 2025, the parties to the *Patrick* Action filed a stipulation to stay the action pending developments in the Securities Class Action, which the Delaware Court of Chancery granted the same day. On June 30, 2026, the Court continued the stay and directed the parties to submit a joint status report by September 1, 2026.

*III.* *The Stockholder Demand*

19. On October 25, 2024, Evolv shareholder Nicholas Ingrao issued an inspection demand for documents pursuant to 8 *Del. C.* § 220 to Evolv. After negotiating and executing a confidentiality agreement with the Company, Evolv produced documents to Ingrao on August 1, 2025. After counsel for Ingrao reviewed and analyzed the Company's Section 220 production, on January 6, 2026, shareholder Ingrao sent a pre-suit litigation demand under Delaware law to the Board, demanding that the Board investigate and bring action against the Individual Defendants for breaches of fiduciary duties arising out of substantially the same alleged misconduct as set forth in the Massachusetts Action and the Delaware Actions.

## C. Mediation Efforts and Settlement Negotiations

20. Beginning in the summer of 2025 and into early 2026, the Settling Stockholders coordinated with one another in efforts aimed at a global resolution of the Derivative Matters. Specifically, on August 1, 2025, Plaintiffs in the Massachusetts Action prepared a confidential settlement demand to address the Individual Defendants' alleged wrongdoing with a comprehensive set of corporate governance reforms to resolve all derivative claims. On August 29, 2025, Plaintiff Bersch sent his own settlement demand to Evolv. In response, the Company and Plaintiffs Maas, Johnson, and Bersch exchanged multiple counterproposals.

21. Eventually, the Settling Parties agreed to explore a potential resolution of the Derivative Matters before Mr. Melnick. By agreement of the Settling Parties, a virtual, all-day mediation was held on February 18, 2026. While the mediation was productive, the Settling Parties were unable to reach an agreement at mediation. Accordingly, the Settling Parties scheduled another mediation session with Mr. Melnick on March 25, 2026.

22. Between the two mediation sessions, the Settling Parties continued to engage in settlement communications under Mr. Melnick's guidance. The Settling Parties grappled with the substantive strengths and weaknesses of the Derivative Matters and discussed at length Settling Stockholders' proposed settlement terms and demands, and continued to exchange further information and counterproposals during this time.

23. The second mediation session was successful and resulted in the Settling Parties drafting and circulating a proposed term sheet. After negotiating its provisions, on April 22, 2026, the Settling Parties executed the Term Sheet, which, subject to approval of the Court, resolves the Derivative Matters and the Released Claims as further described herein. The substantive consideration for the Settlement, the Reforms, are attached to the Stipulation as Exhibit A.

24. As a condition of the Term Sheet, Evolv produced confirmatory discovery negotiated by Stockholders' Counsel. The production consisted of internal Evolv documents produced in the related Securities Class Action, including Board-level materials from the relevant period.

25. Subsequent to the Settling Parties' agreement in principle on the material terms of the Settlement, the parties began separately negotiating in good faith the payment of reasonable attorneys' fees and expenses to be paid to Stockholders' Counsel in consideration of the substantial benefits achieved for Evolv through their efforts. After extensive negotiations through the Mediator, on May 1, 2026, Mr. Melnick issued a proposal of $1,275,000 that the Settling Parties accepted on May 4, 2026, subject to Court approval.

26. Thereafter, the Settling Parties negotiated and executed the Stipulation.

**THE SETTLEMENT'S TERMS**

27. As consideration for the Settlement, Evolv will institute the Reforms designed to prevent the recurrence of the misconduct alleged in the Derivative Matters. The Reforms, summarized below, provide Evolv and its shareholders the benefit of substantial, immediate, and lasting improvements to the Company's corporate governance practices. The Reforms include:

a. Amendments to Evolv's Audit Committee Charter to: (a) require periodic separate private sessions between the committee and management, the internal auditor, and the independent auditor; (b) solicit the input of business unit representatives as necessary to review the Company's public disclosures; and (c) authorize retention of an independent consulting service, as the Board deems necessary, to strengthen internal controls.

b. Amendments to Evolv's Marketing Policy to: (a) ensure that any corrective disclosures required are timely issued; and (b) state the process for persons to report concerns regarding suspected violations of the policy.

c. Amendments to Evolv's Disclosure Committee Charter to add a representative of sales to the Disclosure Committee, provide examples of escalation triggers, and require that the Disclosure Committee coordinate with senior officers and others to ensure accurate disclosures.

d. Amendments to Evolv's Corporate Governance Guidelines regarding the duties and responsibilities of the Lead Independent Director.

e. The General Counsel position will be specifically tasked with certain targeted duties to assist the Board with oversight of the Company's legal and compliance matters.

f. The Board will be required to discuss at least annually: (a) Evolv's efforts to comply with best revenue recognition practices and its Marketing Policy; and (b) Evolv's efforts to comply with the December 6, 2024 permanent injunction ordered by the U.S. District Court for the District of Massachusetts in connection with the Company's November 26, 2024 settlement with the FTC.

g. Enhanced oversight of Evolv's marketing practices to include: (a) meetings at least annually between the General Counsel and the Director of Advertising Law and IP and/or the Chief Marketing Officer to discuss marketing practices generally and marketing claims specifically related to Evolv Express; and (b) monitoring by the General Counsel of compliance with required compliance training for sales and marketing employees.

h. Creation of a new Management-Level Compliance Committee to enhance compliance with applicable law, the Code of Business Conduct and Ethics, and internal policies.

## PRELIMINARY APPROVAL AND STOCKHOLDER NOTICE

28. Following the execution of the Stipulation, on August 5, 2026, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement ("Preliminary Approval Motion") and supporting memorandum of law with the Court. ECF Nos. 10-12. On August 6, 2026, this Court entered the Preliminary Approval Order. ECF No. 15.

29. As part of the Court's Preliminary Approval Order, the Court approved the form and procedure of notice to Evolv stockholders. Preliminary Approval Order, ¶¶ 4, 6. In accordance therewith, on August 10, 2026, Evolv filed a Form 8-K with the SEC attaching the Long Form Notice and the Stipulation (including exhibits thereto). On August 11, 2026, Evolv posted the Long Form Notice and Stipulation (including exhibits) on the Investor Relations page of its website. Finally, on August 17, 2026, Evolv published the Summary Notice in *Investor's Business Weekly*. *See* Declaration of Jamie A. Levitt Confirming Compliance with Notice Plan of Settlement, ¶¶ 6-8. ECF No. 16.

30. To date, no objections have been received by counsel or filed with the Court. The deadline for objections is September 30, 2026. Preliminary Approval Order, ¶10.

## THE SETTLEMENT SHOULD BE FINALLY APPROVED

### A. The Strength of Plaintiffs' Claims Balanced Against the Substantial Benefit the Settlement Provides

31. Here, the benefits of the Settlement are substantial. Within thirty days of approval of the proposed Settlement, Evolv will implement the Reforms designed to prevent the recurrence of the misconduct alleged in the Derivative Matters for at least five years.

32. The Reforms will provide immediate and long-lasting benefits to Evolv. They specifically address the internal control and governance deficiencies that Plaintiffs allege caused or enabled the wrongdoing alleged in the Derivative Matters, thereby reducing the likelihood that the alleged misconduct will recur in the future. The Reforms therefore provide valuable consideration for the Settlement.

33. Moreover, Evolv itself acknowledged that "the initiation and prosecution of the Derivative Matters were the cause of Evolv adopting and implementing the Reforms." Stip., § IV(B)(3).

34. The Settlement is particularly impressive given the strength of the claims and the challenges of derivative litigation. While Plaintiffs continue to believe that their claims are meritorious, establishing liability was not a foregone conclusion. Plaintiffs acknowledge the risk that the Derivative Matters might not have withstood the Defendants' anticipated motions to dismiss, especially given the heightened pleading requirements under Rule 23.1.

35. Rule 23.1's demand requirement presented particular problems. The Massachusetts Actions and the Delaware Actions were premised on "demand futility." Depending on how Evolv responded to Ingrao's litigation demand, he would need to show "wrongful refusal" of his demand, which is governed by the highly deferential business judgment rule. Derivative litigation is notoriously challenging as both of these standards are difficult to meet.

36. Because the Derivative Matters allege the issuance of misleading statements (and oversight claims require bad faith), the Individual Defendants would have continued to argue that they acted in good faith. Proving otherwise is challenging.

37. The valuable consideration of the Settlement confers tangible, meaningful benefits upon Evolv and its stockholders, especially in light of the risks of continued litigation.

38. Therefore, the Settlement, when balanced against the uncertain prospects for prevailing at trial, is fair, reasonable, and adequate and in the best interests of Evolv and its stockholders, and weighs in favor of granting final approval.

**B. The Complexity, Expense, and Likely Duration of the Litigation**

39. Derivative litigation in general, and this case in particular, is complex and this case was likely to be litigated for years before trial.

40. Plaintiffs acknowledge that Defendants would continue to vigorously contest the claims asserted and recognize the risk inherent in all litigation, and especially in this case, as well as the difficulties and delays inherent in such litigation.

41. Given these challenges, the Settlement represented an outcome at least comparable, if not far superior, to that which Plaintiffs might achieve by proceeding to trial.

42. Plaintiffs and Plaintiffs' Counsel are also mindful of the inherent problems of proof of, and defenses to, the types of derivative claims asserted in the Derivative Matters. Shareholder derivative actions are notoriously complicated, and the Derivative Matters, which involve alleged claims dating back years, would have been no exception.

43. Establishing damages would likewise be unpredictable and involve a "battle of experts." Even if Plaintiffs prevailed on the claims and established liability, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation.

44. Collection would pose additional hurdles. For example, the Individual Defendants would likely claim that the Company was required to indemnify them for any damages. Due to these factors, attempts to collect a judgment from the Individual Defendants could result in protracted and lengthy additional litigation with additional corresponding risk.

45. The Settlement eliminates these risks and the other uncertainties of continued litigation, while ensuring that Evolv receives the immediate benefits of the Reforms. This factor, therefore, supports final approval.

**C. The Proposed Settlement Is a Product of Arm's-Length Negotiations**

46. The terms of the Settlement were only agreed upon after arm's-length negotiations over several months, by counsel with extensive experience in derivative and securities litigation, and with the substantial assistance of the Mediator.

47. A mediator's involvement in settlement supports a finding that a settlement was negotiated at arm's-length and is fair and reasonable.

48. Mr. Melnick has substantial experience mediating complex derivative lawsuits as set forth in his declaration. *See* Exhibit 1. He concluded that the proposed Settlement "represents a well-reasoned and sound resolution to the complicated and uncertain shareholder derivative claims at issue." *Id.*, ¶4. Although recognizing the Court will make its own determination, in Mr. Melnick's view, based on the submissions and discussions with counsel, he "recommend[s] the proposed Settlement as reasonable, arm's length and consistent with the risks and potential rewards of the claims asserted." *Id.*

49. Once the Reforms were agreed upon, the Settling Parties turned their attention to negotiating attorneys' fees. After weeks of negotiations through Mr. Melnick, he eventually issued a mediator's proposal for $1,275,000 inclusive of all fees and expenses. The Settling Parties accepted Mr. Melnick's proposal on a double-blind basis.

**D. The Stage of the Proceedings and the Amount of Discovery Completed**

50. The case has proceeded long enough for Plaintiffs to have a strong understanding of the merits of the Derivative Matters and likelihood of recovery at trial. Plaintiffs conducted substantial investigation into their claims, including: (i) reviewing Evolv's press releases and

public statements, SEC filings and other regulatory filings; (ii) reviewing news and media reports about Evolv and the governmental investigations; (iii) researching the applicable law; (iv) preparing and filing complaints and the litigation demand in the Derivative Matters; (v) reviewing and analyzing relevant pleadings in the Securities Class Action and evaluating the merits of, and Defendants' liability in connection with, the Securities Class Action and the Derivative Matters; (vi) preparing comprehensive settlement demands; (vii) participating in extensive settlement discussions with Defendants' Counsel, including multiple mediation sessions as well as continued settlement communications under the guidance of, and facilitated by, the Mediator for several months during which confidential information about the Company was provided to Plaintiffs' Counsel; (viii) reviewing confirmatory discovery pursuant to the Term Sheet; (ix) negotiating the terms of the Stipulation; and (x) presenting the Settlement to the Court.

51. Plaintiffs' Counsel were well-informed in evaluating the risks of continued litigation and have sufficient information to support the decision regarding the fairness, adequacy, and reasonableness of the Settlement.

**E. The Opinion of Competent Counsel**

52. Here, counsel for the Parties were well-positioned to assess the strengths and weaknesses of their respective clients' claims or defenses and support the Settlement. The opinion of Stockholders' Counsel who have considerable experience in complex and stockholder litigation, much of which has resulted in substantial recoveries for corporations and their shareholders, should also be considered. *See* Exhibits 2-6 (Declarations from Stockholders' Counsel reflecting their firms' experience and backgrounds).

53. Counsel for all Parties drew upon their extensive experience in shareholder derivative litigation to evaluate the Derivative Matters and the Settlement. The Settlement was reached only after extensive arm's-length negotiations with a thorough understanding of the

factual and legal issues presented; the assessments of counsel for the Parties are, therefore, entitled to great deference.

54. The Settlement is the result of hard-fought, arm's-length negotiations between highly experienced and capable counsel with a comprehensive understanding of the relevant facts and law and the relative strengths and weaknesses of the claims and defenses. Stockholders' Counsel have substantial experience litigating stockholder derivative actions. Moreover, Defendants are represented by skilled derivative litigation practitioners at Morrison & Foerster, LLP, a widely respected corporate defense firm. The negotiations spanned months through virtual mediation sessions, numerous telephonic and videoconference conversations, and emails. Before finalizing an agreement on the Reforms, the Settling Stockholders, through their counsel, carefully considered the likelihood of success at trial and the fairness of the proposed settlement. Their opinions are entitled to great deference.

55. Further, Evolv "acknowledges and agrees that the Reforms confer substantial corporate benefits upon Evolv and its stockholders and that the Settlement is in all respects fair and reasonable and in the best interests of the Company and its stockholders." Stip., § IV(B)(2).

## THE FEE AND EXPENSE AMOUNT IS REASONABLE AND SHOULD BE APPROVED

56. In recognition of these substantial benefits achieved through the Settlement, the Settling Parties, with Mr. Melnick's oversight and substantial assistance, agreed to the Fee and Expense Amount of $1,275,000, inclusive of attorneys' fees, litigation expenses, and Service Awards to the Settling Stockholders, subject to Court approval.

57. Here, Stockholders' Counsel successfully prosecuted the Derivative Matters and negotiated significant concrete corporate governance improvements for Evolv.

58. The Reforms negotiated here specifically target the core alleged wrongdoing.

Plaintiffs allege, *inter alia*, that there were questions about the efficacy of Evolv's products, governmental regulatory agencies inquired about Evolv's marketing practices, and the accounting for its sales transactions were inaccurate, causing unreliable financial statements. The Reforms specifically address these deficiencies by, *inter alia*: (i) improving the Audit Committee's functions; (ii) amending Evolv's Marketing Policy and oversight of its marketing practices; (iii) strengthening Evolv's disclosures; (iv) improving oversight over legal and compliance matters; and (v) creating a Management-Level Compliance Committee to enhance Evolv's compliance with laws and internal policies. *See* Stip., Ex. A.

**A. Comparable Cases Support Approval of the Fee and Expense Amount**

59. The requested Fee and Expense Amount is less than what is awarded in similar derivative cases. Courts regularly award higher fees when corporations agree to similar governance reforms in response to derivative lawsuits. A few examples include *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794 RSL, 2011 WL 13195985, at *1 (W.D. Wash. Jan. 6, 2011) ($5 million fee for corporate governance); *In re S. Co. S'holder Derivative Litig.,* 2022 WL 4545614, at *11 (N.D. Ga. June 9, 2022) ($3.5 million fee for corporate governance); *Geare v. Begley*, No. 1:11-cv-09074 (N.D. Ill. Jan. 23, 2015) (awarding $2.63 million in fees for governance including increased executive oversight of internal auditing functions and enhanced insider trading policies) (Ex. 7); *In re Okta, Inc. Derivative Litig.*, 3:22-cv-07480-SI (N.D. Cal. 2023) (awarding $2.25 million for corporate governance including amendments to company policies and charters, enhancement to disclosure procedures, and enhancement to duties and responsibilities of certain officers) (Ex. 8); *Pacheco v. Guyer, et al. (Ophthotech),* Case No. 1:18-cv-07999-VSB (S.D.N.Y. 2023) (awarding $2,450,000 in attorneys' fees for governance-only settlement including a new Disclosure Committee Charter and enhancements to the company's oversight controls, insider trading controls, clawback policy, board independence, and employee and director training) (Ex.

9); *Bacas v. Way*, 2008 WL 746825, at *2 (S.D. Tex. Mar. 20, 2008) (awarding $3 million in fees for director independence standards and execution of written board charters).

**B. Skill and Efficiency of Counsel**

60. Stockholders' Counsel also prosecuted the Derivative Matters with skill and efficiency. As explained in the firm résumés attached to each of the firms' fee declarations (Exhibits 2-6), Stockholders' Counsel have years of experience prosecuting derivative actions.

61. The fact that Defendants hired the elite defense firm of Morrison & Foerster, LLP speaks to the skill necessary to prosecute the Derivative Matters. Defense counsel zealously represented their clients at every step. Further, when negotiating the Fee and Expense Amount, Evolv and its insurers negotiated aggressively.

62. The efficiency with which the Settling Stockholders pursued their claims is shown most clearly by comparing the value of the reforms and the efforts undertaken. The result achieved, which addresses the alleged wrongs and allows Evolv to move on with its business, demonstrates that the efficiency helped, rather than harmed, the Company.

**C. Lack of Objections to the Fee and Expense Amount**

63. Notice of both the Settlement and Stockholders' Counsel's requested Fee and Expense Amount was provided through the notice program approved by the Court at preliminary approval. Despite the widely disseminated Notice, to date there have been no objections to the Settlement and no objections to the requested Fee and Expense Amount or Service Awards. The deadline to object to any aspect of the Settlement is September 30, 2026.

**D. The Complexity and Duration of the Case and the Time and Efforts of Stockholders' Counsel**

64. The Derivative Matters were complex, even as derivative cases go. Despite the complexities, the Settling Stockholders achieved a substantial benefit through significant litigation

efforts.

65. Stockholders' Counsel, all of whom are experienced and skilled in stockholder litigation, committed significant time and money to the Derivative Matters, including a collective 1,104.35 hours and $41,840.36 in expenses. Stockholders' Counsel's collective lodestar at current hourly rates is $1,189,555.00, representing a lodestar multiplier of 1.07. If accounting for litigation expenses and the requested Service Award, the lodestar multiplier is 1.03. Should the Court wish to conduct one, a "lodestar cross-check" confirms that the benefits achieved here support the requested attorneys' fees. The time Stockholders' Counsel devoted to the Derivative Matters was necessary and reasonable. Moreover, the hourly rates are comparable to those approved in other securities and derivative litigation by attorneys who performed similar services.

66. This multiplier is well below multipliers awarded in other corporate governance and securities cases and is reasonable, especially given the substantial benefits achieved and the complexity of the issues presented.

67. These expenses are substantiated in the accompanying declarations, and reflect actual costs of prosecuting the Derivative Matters. Because the reimbursement request on behalf of Stockholders' Counsel is reasonable, it should be granted.

68. Here, all of the expenses were reasonable and necessarily incurred as part of Stockholders' Counsel's efforts to prosecute the claims. The expenses for which counsel seek reimbursement are the types of expenses routinely charged to paying clients. Fully detailed in each of the firm declarations (Exhibits 2-6), these expenses include items such as court filing fees, mediation fees, and online legal research.

69. These expenses are to be paid out of, and not in addition to, the requested $1,275,000 Fee and Expense Amount.

**E. Contingent Nature of the Case**

70. Stockholders' Counsel undertook the Derivative Matters on an entirely contingent-fee basis, and thus assumed a substantial risk that the litigation would yield no recovery despite devoting substantial time and incurring considerable out-of-pocket expenses. Derivative litigation, in particular, presents particular procedural and substantive obstacles.

71. Despite the risks of non-payment, Stockholders' Counsel undertook this representation on a completely contingent basis and achieved a highly favorable result. Stockholders' Counsel should be compensated for the opportunity cost of forgone work on other matters.

**THE SERVICE AWARDS SHOULD BE APPROVED**

72. Courts also routinely grant service awards to plaintiffs in derivative cases. Such awards encourage shareholders to be actively involved in litigation to protect a company and its operations.

73. Settling Stockholders here seek an award of $2,000 each, or $10,000 in total.

74. The Service Awards are warranted because the Settling Stockholders diligently fulfilled their respective obligations by, among other things: (1) reviewing pertinent pleadings, court filings, and other litigation materials; (2) communicating with counsel and overseeing the litigation; (3) discussing potential settlement with counsel; and (4) remaining available to participate in further proceedings, including discovery.

75. Moreover, the awards would be paid solely out of the Fee and Expense Amount, further supporting approval of the awards.

## EXHIBITS

76. Attached hereto are true and correct copies of the following exhibits:

| EXHIBIT | TITLE |
|---|---|
| 1 | Declaration of Jed D. Melnick, Esq. in Support of Final Approval of Derivative Settlement |
| 2 | Declaration of Erica L. Stone in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement and Award of Attorneys' Fees and Expenses |
| 3 | Declaration of Shane Rowley in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement and Award of Attorneys' Fees and Expenses |
| 4 | Declaration of Dustin L. Schubert in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement and Award of Attorneys' Fees and Expenses |
| 5 | Declaration of Timothy Brown in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement and Award of Attorneys' Fees and Expenses |
| 6 | Declaration of Brett D. Stecker in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement and Award of Attorneys' Fees and Expenses |
| 7 | Stipulation of Settlement (With Exhibit A) and Final Order and Judgment in *Geare v. Begley*, No. 1:11-cv-09074 (N.D. Ill. Jan. 23, 2015) (ECF Nos. 74, 74-1, 89) |
| 8 | Stipulation and Agreement of Settlement (Without Exhibits) and the Final Judgment and Order of Dismissal with Prejudice *In re Okta, Inc. Derivative Litig*., 3:22-cv-07480-SI (N.D. Cal. 2023) (ECF Nos. 37-2 and 46) |
| 9 | Stipulation of Settlement (With Exhibit A) and the Order and Final Judgment Approving Derivative Settlement and Order of Dismissal with Prejudice in *Pacheco v. Guyer, et al. (Ophthotech),* Case No. 1:18-cv-07999-VSB (S.D.N.Y. 2023) (ECF Nos. 85-1, 98) |

I declare under penalty of perjury that the foregoing facts are true and correct. Executed this 23rd day of September, 2026, at New York, New York.

/s/ *Erica L. Stone*
Erica L. Stone